Eastern District of Kentucky
FILED

MAY 2 2 2025

AT LEXINGTON
Robert R. Carr
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

TARA DIZNEY, and
KENDRA ARTHUR

    Plaintiffs,

V.

JASON BACK, and,
JULIE CAMPBELL,

    Defendants.

CIVIL ACTION NO. 6:24-CV-69-KKC

**<u>OPINION & ORDER</u>**

\*\*\* \*\*\* \*\*\*

This matter is before the Court on the Defendants' motions to dismiss (DEs 10, 28, 35) and the Plaintiffs' motion for leave to file an amended complaint (DE 34).

## I. Factual Background

Plaintiffs Tara Dizney and Kendra Arthur were students at the Creation School of Cosmetology ("the School") in Corbin, Kentucky beginning in 2020 and graduated in February 2021. Cosmetology schools in Kentucky are supervised and regulated by the Kentucky Board of Cosmetology ("the Board"). The Board oversees the licensing of cosmetology schools, instructors, and students. In 2019, the Board's Executive Director, Julie Campbell, hired Jason Back to the role of Board inspector.

Back inspected the School before, during, and after the Plaintiffs' time as students there. During an audit of the School's records in early 2022, Back identified several potential issues. Of particular relevance to this case, Back suspected that the Plaintiffs had taught classes at the School without obtaining necessary licenses. In February 2022, Back made

1

recommendations to the Board's Complaints Committee. That Committee then decided to suspend and revoke the licenses for the School, its owner, and its instructor.

After completing his investigation, Back contacted the Whitley County Commonwealth Attorney's office to inquire about initiating the grand jury process against the Plaintiffs. He was informed on how to start that process, and on July 25, 2022, he submitted a grand jury form and his case report to the Commonwealth Attorney's Office. Back then testified before the grand jury. On August 15, 2022, the Whitley County grand jury indicted the Plaintiffs on charges of violating KRS 514.070: Theft by Failure to Make Required Disposition of Property. The Plaintiffs pled not guilty. Several months later, their charges were dismissed by the Whitley County Circuit Court.

The Plaintiffs then filed this action and assert claims against Back and Campbell. They claim that Back violated their constitutional rights by wrongfully initiating criminal proceedings against them, engaged in malicious prosecution, and was negligent. Additionally, the Plaintiffs claim that Campbell was negligent in hiring and retaining Back as an inspector and that she was also negligent in training and supervising him.

## II. Standard of Review

Campbell filed a Rule 12(b)(6) motion in September 2024 and Back filed the same in January 2025. While those motions were pending, the Plaintiffs filed a motion for leave to file an amended complaint to correct the alleged deficiencies in their original complaint. (DE 34.) Back filed a response to the Plaintiffs' motion and a second Rule 12(b)(6) motion. (DEs 35, 36.) Campbell, in contrast, did not respond to the Plaintiffs' motion, ostensibly deciding to maintain the arguments she made in her September 2024 motion.

Generally, the Court freely grants leave to amend complaints. Fed. R. Civ. Pro. 15(a). When plaintiffs seek to amend in the face of a pending Rule 12(b)(6) motion, however, they must show that the proposed amendment will change the outcome of the pending motion. *See*

*Young v. Overly*, No. 17-6242, 2018 WL 5311408, at *4 (6th Cir. July 2, 2018) (citing *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 355 (6th Cir. 2014)). Similarly, under the futility rule, the Court may deny a motion for leave to file an amended complaint if it concludes that the amended pleading could not withstand a motion to dismiss. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) ("[a] proposed Amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion,") (citation omitted).

On a Rule 12(b)(6) motion to dismiss, the "factual allegations in the complaint must be regarded as true." *Scheid v. Fanny Farms Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (citation omitted). At the pleading stage, Rule 8(a)(2) requires only a short and plain statement which shows that the pleader is entitled to relief and which gives the defendant notice of the claims and the grounds upon which they rest. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, the factual claims in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

### III. Analysis

#### A. Plaintiffs' claims against Jason Back

##### i. Count I: 42 U.S.C. § 1983 liability for wrongful prosecution and malicious prosecution under Kentucky common law

Count I of the Amended Complaint includes two distinct but related claims. First, the Plaintiffs claim that Back deprived them of their constitutionally protected rights, in violation of 42 U.S.C. § 1983, by wrongfully initiating criminal proceedings against them. Second, the Plaintiffs claim that Back engaged in malicious prosecution under Kentucky common law. These claims involve shared elements that Back argues the Plaintiffs fail to sufficiently plead, so the Court will analyze them together where appropriate.

3

### 1. Whether the Plaintiffs failed to state a claim under Count I

To succeed on either a § 1983 claim for wrongful prosecution or a claim for malicious prosecution under Kentucky law, a plaintiff must establish that (1) the defendant initiated a criminal prosecution against them by making, influencing, or participating in the prosecution decision, and (2) the defendant acted without probable cause to support the charges. *DiPasquale v. Hawkins*, 748 F. App'x 688, 693 (6th Cir. 2018) (listing the elements of a § 1983 wrongful prosecution claim); *Estep v. Combs*, 467 F.Supp.3d 476, 499 (E.D. Ky. 2020) (listing the elements of a malicious prosecution claim under Kentucky law). These claims require proof of additional elements, but only the two elements listed have been challenged by Back.

Back argues that the Plaintiffs cannot establish the first element because his only participation in the initiation of proceedings against them came in the form of his grand jury testimony and preparation—which Back argues is conduct shielded from liability by the doctrine of absolute immunity. It is well settled law that a grand jury witness is absolutely immune from liability based on that witness's testimony. *Rehberg v. Paulk*, 566 U.S. 356, 369 (2012). Moreover, the activity a grand jury witness engages in to prepare for their testimony is also absolutely immune and cannot serve as the factual basis for a claim against them. *Id.* Absolute immunity is not afforded to a grand jury witness, however, for his actions "prior to and independent of his grand-jury testimony." *King v. Harwood*, 852 F.3d 568, 587 (6th Cir. 2017) (citation omitted).

Here, the Plaintiffs do not premise their claims in Count I on Back's grand jury testimony. Back would be entitled to absolute immunity if such were the case. Rather, the Plaintiffs premise their claims in Count I on allegedly false statements Back included in a report he submitted to the Whitley County Commonwealth Attorney's office during the grand jury initiation process. The issue, then, is whether the drafting of that report was

4

"preparatory activity" protected by absolute immunity, or whether the drafting of that report was an action taken "prior to and independent of" the grand jury context.

In the Amended Complaint, the Plaintiffs describe how Back initiated the grand jury proceeding. They allege that Back reached out to the Commonwealth Attorney's office "asking about the process for presenting a case to the grand jury," after he had completed his investigation. (DE 34-1 at ¶ 132.) In response, the Plaintiffs allege the Commonwealth Attorney's office informed Back that "he needed to submit a copy of the case report . . . as well as complete a grand jury form." (*Id.* at ¶ 135.) Back complied and submitted what is marked as Exhibit 4 to Back's motion to dismiss. (DE 35-4.)[1] Exhibit 4, while titled "Grand Jury Form," consists of two distinct documents. The first document appears to be, in fact, a grand jury form—consisting of various fields where pertinent information can be filled in, including spaces for the name of the accused, "crime[s]," and "victim(s)." (*Id.* at Page ID# 771–72.) The second document is not titled, but its format is decidedly different than the first. It consists of a narrative-styled report describing Back's investigation into the Plaintiffs and others at the School. The Plaintiffs premise their claims in Count I on this investigative report and claim that Back prepared this report "as part of his investigation," rather than in preparation for his grand jury testimony. (DE 34-1 at ¶ 139.) Back argues in response that this allegation merely mislabels the grand jury form. (DE 35 at 12.)

Taking the facts in the Amended Complaint as true and in the light most favorable to the Plaintiffs—as the Court must at this stage—the Plaintiffs state a claim that is plausible on its face, and Back is not entitled to absolute immunity at this stage. This is because under

---

[1] It is proper to consider Back's exhibit at the motion to dismiss stage because the report was both referenced in the complaint and is central to the Plaintiffs' claims. *Luis v. Zang*, 833 F.3d 619, 632 (6th Cir. 2016) ("A court evaluating a motion to dismiss may . . . consider . . . exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein.").

5

the Plaintiffs' version of events, Back's report was prepared during his investigation and thus "prior to and independent of," his grand jury testimony. *King*, 852 F.3d at 587.

Back next argues that the Plaintiffs cannot establish the second element of their claims under Count I, proving he acted without probable cause, because "three neutral entities," have already determined that probable cause existed. (DE 35 at 23.) Essentially, Back argues that the Plaintiffs cannot carry their burden because probable cause was determined to exist during the investigation by (1) the Board, (2) a Whitley County District Court Judge, and (3) the Whitley County grand jury.

Back overstates his position. None of the prior probable cause determinations preclude the Plaintiffs from establishing that probable cause did not exist to support the charges against them. For one, the Board and the Whitley County Judge were answering a different probable cause question than the one at issue here. The question in this case is whether Back had probable cause to support the charges against the Plaintiffs when he initiated the grand jury process in July 2022. In contrast, the Board and the Whitley County Judge were evaluating different probable cause questions at earlier stages in the investigation (February and March of 2022, respectively). The Board answered only the question of whether there was probable cause to support the suspension of certain licenses in February 2022. And the Whitley County Judge answered only whether there was probable cause to support the issuance of a warrant to search the School in March 2022. Because probable cause may expire during the course of an investigation, those earlier determinations do not outright preclude the Plaintiffs from carrying their burden as Back suggests. *United States v. Hython*, 443 F.3d 480, 485 (6th Cir. 2006) ("[t]he expiration of probable cause is determined by the circumstances of each case[.]").

Moreover, the grand jury indictment does not preclude the Plaintiffs from carrying their burden with respect to the second element. It is true that "[n]ormally, 'an indictment,

fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause.'" *DiPasquale*, 748 F. App'x at 693 (quoting *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006)). The Sixth Circuit has, however, carved out an exception to that general rule. In *King*, the court held that "the presumption that the grand-jury indictment is evidence of probable cause is rebuttable," is cases where the following conditions are present: (1) "a law-enforcement officer, in the course of setting a prosecution in motion, either knowingly or recklessly makes false statements"; (2) "the false statements and evidence, together with any concomitant misleading omissions, are material to the ultimate prosecution of the plaintiff"; and (3) "the false statements, evidence, and omissions do not consist solely of grand-jury testimony or preparation for that testimony[.]" 852 F.3d at 587–88.

Put plainly, the Plaintiffs allege sufficient facts to render the grand jury's probable cause determination rebuttable under the exception announced in *King*. The Plaintiffs allege that Back intentionally "made material misrepresentations and omissions in his report, which were relied upon by the Commonwealth Attorney in deciding to present the case to the grand jury." (DE 34-1 at ¶ 4.) And the Amended Complaint identifies, with particularity, which statements in Back's report were allegedly false. (*Id.* At ¶¶ 149–61.)

Based on the foregoing, the Court finds that Count I of the Plaintiffs' Amended Complaint states a plausible claim.

### 2. *Whether Back is entitled to quasi-judicial immunity for the Plaintiffs claims in Count I*

Back argues in the alternative that he is entitled to quasi-judicial immunity with respect to the Plaintiffs' claims brought under Count I.

Quasi-judicial immunity is derived from the doctrine of absolute judicial immunity—which entitles judges to immunity from suits for money damages for actions taken in the judge's judicial capacity. *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994). This absolute

immunity is extended to "non-judicial officers who perform 'quasi-judicial' duties." *Id.* (quoting *Joseph v. Patterson*, 795 F.2d 549, 560 (6th Cir. 1986)). "[A] court looks to the nature of the function performed, not the identity of the actor who performed it," to determine if a certain official is entitled to quasi-judicial immunity. *Id.* (cleaned up). If the challenged conduct is prosecutorial by nature, for example, the official is entitled to quasi-judicial immunity. *Id.* If, on the other hand, the challenged conduct involves investigatory or administrative functions, then the official is not entitled to quasi-judicial immunity. *Quatkemeyer v. Kentucky Bd. of Med. Licensure*, 506 F. App'x 342, 347 (6th Cir. 2012).

Back's entitlement to quasi-judicial immunity turns on whether the conduct that forms the factual basis for Count I—Back's creation of his investigative report—was a quasi-judicial duty. Viewing the facts in the light most favorable to the Plaintiffs, Back's creation of the report was a non-quasi-judicial function. This is because, again, under the Plaintiffs' version of facts, Back prepared the report during his investigation and before he involved himself in the prosecutorial process. Such conduct is not "so integral or intertwined with the judicial process such that quasi-judicial immunity applies." *Draine v. Leavy*, 504 F. App'x 494, 496 (6th Cir. 2012). Accordingly, at this stage the Court finds that Back is not entitled to quasi-judicial immunity with respect to the Plaintiffs' claims brought under Count I.

### 3. Whether Back is entitled to qualified immunity for the Plaintiffs' § 1983 claim

Back also argues that he is entitled to qualified immunity for the Plaintiffs' § 1983 claim against him.

Qualified immunity involves a two-step inquiry in which the Court determines whether (1) a defendant violated a constitutional right; and (2) the right was clearly established. *Kovacic v. Cuyahoga Dep't of Child. & Fam. Servs.*, 724 F.3d 687, 695 (6th Cir. 2013). Here, Back argues that the Plaintiffs fail to plead sufficient facts to show that he

8

violated any of their constitutional rights. Back's entire qualified immunity argument, however, is premised on the Court finding that his report central to the claims in Count I was drafted in connection with the grand jury process. (DE 35 at 18–19.) Back explains that "aside from the alleged false statements in the Whitley County Grand Jury process, Plaintiffs have not sufficiently alleged that a constitutional right of theirs was violated." (*Id.* At 19.) As explained above, the Court must accept the factual allegations in the Amended Complaint as true at this stage. And here, the Plaintiffs' version of events alleges that Back made false statements prior to and independent of the grand jury process. Accordingly, Back's argument fails, and he is not entitled to qualified immunity at this stage.

4. *Whether Back is entitled to qualified official immunity for the Plaintiffs' malicious prosecution claim*

Back finally argues that he is entitled to qualified official immunity for the Plaintiffs' malicious prosecution claim.

Under Kentucky law, qualified official immunity protects public officials from suit when certain elements are satisfied. *Yanero v. Davis*, 65 S.W.3d 510, 521 (Ky. 2001). The doctrine applies to both negligence actions and intentional torts. *Reich v. City of Elizabethtown, Kentucky*, 945 F.3d 968, 982 (6th Cir. 2019). "In the context of a malicious prosecution claim," however, "the issue of qualified official immunity is superfluous." *Martin v. O'Daniel*, 507 S.W.3d 1, 5–6 (Ky. 2016). This is because "qualified official immunity is available only to officials acting in good faith," and the "eponymous element of a malicious prosecution action," involves proving an official acted with malice—i.e., acted in bad faith. *Id.* at 5. Given the overlap, the defense of qualified official immunity is not available in malicious prosecution claims and Back is therefore not entitled to dismissal on its basis. *Id.*

### ii. Count II: Negligence and gross negligence

Count II of the Amended Complaint charges Back with negligence and gross negligence. Back argues that these claims are time barred. A district court applies the statute of limitations of the forum state when evaluating state law claims. *See Combs v. Int'l Ins. Co.*, 354 F.3d 568, 578 (6th Cir. 2004). Under Kentucky law, a negligence claim must be brough within one year after the cause of action accrued. KRS 413.140(1)(a). A negligence action "accrues once all of the elements supporting liability have actually occurred." *Queensway Financial Holdings Ltd. v. Cotton & Allen, P.S.C.*, 237 S.W.3d 141, 147 (Ky. 2007). In malicious prosecution cases, for example, accrual is postponed until the favorable termination of criminal proceedings. *Heck v. Humphrey*, 512 U.S. 477, 489–90 (1994).

Here, the Plaintiffs' negligence claim in Count II is premised on their more particularized malicious prosecution claim. Like their malicious prosecution claim, the Plaintiffs' negligence claim was not a complete cause of action until the favorable termination of their criminal proceedings. *See Heck*, 512 U.S. at 489–90. Dizney received a favorable termination on May 31, 2023, and Arthur received a favorable termination on October 31, 2023. The Plaintiffs filed their original complaint less than one year later of each of those dates on May 28, 2024. (DE 1.) Accordingly, the Plaintiffs' claim is not time barred.

### B. Plaintiffs' claims against Julie Campbell

Count III of the Amended Complaint charges Campbell with (1) negligent hiring and retention, and (2) negligent training and supervision. Campbell moves to dismiss both claims, arguing she is either entitled to qualified official immunity or that the Plaintiffs fail to state a claim upon which relief can be granted.

### i. Qualified official immunity

Although qualified official immunity is meant to protect defendants from the burdens of litigation, the fact-intensive nature of an immunity defense makes it "difficult for a

defendant to claim qualified immunity on the pleadings before discovery." *Wesley v. Campbell*, 779 F.3d 421, 434 (6th Cir. 2015). Nonetheless, in some cases, "the validity of such defenses may be apparent from the face of the complaint, rendering a motion to dismiss appropriate." *Crawford v. Tilley*, 15 F.4th 752, 763 (6th Cir. 2021). Under Kentucky law, qualified official immunity protects a public official from suit so long as she performed "(1) discretionary acts or functions . . . ; (2) in good faith; and (3) within the scope of [her] authority.'" *Yanero v. Davis*, 65 S.W.3d 510, 521–22 (Ky. 2001). Campbell has the initial burden of showing that she performed discretionary acts within the scope of her employment, and then the burden shifts to the Plaintiffs to prove she acted in bad faith. *Id.* at 523.

For the first prong, courts determine whether an official's challenged conduct was discretionary or ministerial. "Discretion in the manner of the performance of an act arises when the act may be performed in one or two or more ways . . . and where it is left to the will or judgment of the performer to determine in which way it shall be performed." *Haney v. Monsky*, 311 S.W.3d 235, 240 (Ky. 2010). Ministerial acts are those that an official is either required to carry out or has "little choice as to when, where, how, or under what circumstances [they] are to be done." *Doe v. Patton*, 381 F.Supp.2d 595, 603 (E.D. Ky. 2005).

Campbell argues that her conduct in both (1) hiring and retaining Back, and (2) training and supervising Back were discretionary functions. With respect to training and supervising Back, the Plaintiffs do not dispute the discretionary nature of Campbell's conduct. The Plaintiffs do argue, however, that Campbell's hiring and retaining Back involved ministerial conduct. In *Yanero*, the Supreme Court of Kentucky explained that while the act of hiring a public employee is typically discretionary, that act involves a ministerial component. 65 S.W.3d at 528. That ministerial component involves making sure that the employee being hired "is not incompetent." *Id.* Thus, according to the court in *Yanero*, "a

public officer can be subject to personal liability in tort for hiring an employee known to that officer to be incompetent to perform the task for which he/she was hired." *Id.*

Here, Campbell fails to carry her initial burden to show that the act of hiring and retaining Back was discretionary. The Plaintiffs allege that Campbell knew or should have known that Back was unfit to be hired and retained for the inspector position but was hired and retained anyways. (DE 34-1 at ¶197.) They allege that Campbell failed to conduct a background check on Back or contact his former employer—where they allege Back was "under investigation for improper acts committed during one or more investigations." (DE 34-1 at ¶ 15.) On these facts, Campbell's act of hiring and retaining Back was ministerial, *Yanero*, 65 S.W.3d at 528, and Back is not entitled to qualified official immunity at this stage.

Having found that Campbell is not entitled to qualified official immunity on the Plaintiffs' negligent hiring and retention claim, the Court will turn to the same issue on the Plaintiffs' negligent training and supervising claim. The Plaintiffs do not challenge Campbell's ability to carry her burden with respect to the third prong of the qualified official immunity analysis. Accordingly, the only remaining issue is whether the Plaintiffs carry their reciprocal burden to prove a lack of good faith on the facts alleged.

The good/bad faith analysis involves an objective and subjective component. For the objective component, "'[b]ad faith' can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position." *Yanero*, 65 S.W.3d at 523. For the subjective component, bad faith is established if the official "willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive." *Id.*

Here, the Plaintiffs fail to plead sufficient facts to establish bad faith. In the Amended Complaint, the Plaintiffs summarily state that Campbell was "grossly negligent," in training and supervising Back. (DE 34-1 at ¶198.) But the factual basis for the Plaintiffs' conclusion

is missing, and the Court need not accept bare legal conclusions as true. *Twombly*, 550 U.S. at 555. Even drawing all reasonable inferences in the Plaintiffs' favor, there are no factual allegations which lead to the conclusion that Campbell acted in bad faith. There is no allegation that she should have known her conduct caused the Plaintiffs' constitutional rights to be violated (objective bad faith), nor are there allegations which could show that she "intended to harm the [Plaintiffs] or acted with a corrupt motive," (subjective bad faith). *Yanero*, 65 S.W.3d at 523. Accordingly, because the validity of the qualified official immunity defense is apparent from the face of the Amended Complaint, *Crawford*, 15 F.4th at 763, Campbell is entitled to dismissal of the Plaintiffs' negligent training and supervision claim.

### ii. Failure to state a claim

With respect to the Plaintiffs' negligent hiring and retention claim, Campbell argues in the alternative that the Plaintiffs fail to state a claim upon which relief can be granted.

Under Kentucky law, plaintiffs asserting a negligent hiring and retention claim must show "(1) the employer knew or reasonably should have known that an employee was unfit for the job for which he was employed, and (2) the employee's placement or retention at that job created an unreasonable risk of harm to the plaintiff." *Smith v. Norton Hosps., Inc.*, 488 S.W.3d 23, 32 (Ky. App. 2016). This requires plaintiffs to prove "some foreseeability or awareness on the part of the employer that the employee created the risk at issue." *Taylor v. JPMorgan Chase Bank, N.A.*, 13-cv-24, 2014 WL 66513, at *3 (E.D. Ky. Jan. 8, 2014) (citing *Oakley v. Flor–Shin Inc.*, 964 S.W.2d 438, 442 (Ky.Ct.App.1998)).

Here, the Plaintiffs allege sufficient facts to state a plausible claim. In their Amended Complaint, the Plaintiffs allege that Campbell should have known that Back was accused of investigatory misconduct at his prior job. Moreover, the Plaintiffs allege that Campbell knew about the suspect manner in which Back performed his duties as an investigator once hired. In particular, the Plaintiffs allege Campbell knew that Back was oftentimes overly

13

aggressive, had used police officers to wield power that he did not possess as an investigator, and had engaged in questionable investigative tactics when faced with legal impediments (e.g., Back reporting an unsupervised child in the School to gain entry when he knew the child was not alone). (DE 34-1 at ¶¶ 74, 94–98, 128–131.) Taking these factual allegations as true, the Plaintiffs are able to make out their *prima facie* negligent hiring and retention claim and prove that Campbell was aware that Back's job performance created a risk that the Plaintiffs' rights would be violated. *Oakley*, 964 S.W.2d at 442.

### IV. Stay

The Defendants request that the Court stay proceedings should their motions to dismiss not be granted in full. They argue that granting the stay would promote judicial economy as there are administrative proceedings involving the Plaintiffs being litigated before the Board. Those proceedings, however, involve only charges against the School. And though two of those charges relate to actions allegedly taken by the Plaintiffs, the proceedings before the Board involve different legal and factual issues than those present here. Accordingly, the Court finds that a stay is not warranted.

### V. Conclusion

Based on the foregoing, it is hereby ORDERED that

(1) Campbell's motion to dismiss (DE 10) is GRANTED and DENIED in part as follows:

    a. GRANTED with respect to the Plaintiffs' negligent training and supervision claim; and

    b. DENIED with respect to the Plaintiffs' negligent hiring and retention claim;

(2) Back's motion to dismiss (DE 28) is DENIED as moot; and

(3) Back's motion to dismiss (DE 35) is DENIED; and

(4) the Plaintiffs' motion for leave to file an amended complaint (DE 34) is GRANTED, and the attached Amended Complaint (DE 34-1) SHALL be filed in the record.

14

This 22nd day of May, 2025.



Signed By:
*Karen K. Caldwell*
United States District Judge